**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JUSTIN KORN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SIMPLILEARN AMERICAS INC.,<br><br>Defendant. | Case No. 1:25-cv-10461-NMG<br><br>Hon. Nathaniel M. Gorton |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER OR, ALTERANTIVELY, TO DISMISS THE FIRST AMENDED COMPLAINT**

Dated: June 10, 2025

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (BBO #716245)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com

*Attorney for Plaintiff*

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ........................................ 1

ARGUMENT ........................................ 2

I. TRANSFER IS INAPPROPRIATE BECAUSE THE FORUM SELECTION CLAUSE IS NEITHER ENFORCEABLE NOR APPLICABLE ........................................ 2

A. Defendant Has Failed To Meet Its Burden To Show Reasonable Notice And Assent Of Its Terms And Conditions ........................................ 2

1. Defendant Has Not Shown That It Put Plaintiff On Notice Of Its Terms ........................................ 3

2. Defendant Has Not Shown Plaintiff Unambiguously Assented To The Terms ........................................ 6

B. Plaintiff's Claim Is Not Within The Scope Of The Forum Selection Clause ........................................ 7

C. To The Extent The Forum Selection Applies, Transfer To New York Or California Is Proper Because That Is The Forum Defendant Selected When Plaintiff Created His Account ........................................ 11

II. PLAINTIFF PLAUSIBLY ALLEGES A VIOLATION OF THE VPPA ........................................ 12

A. Plaintiff Is A "Consumer" Under *Yershov* ........................................ 12

B. Defendant Disclosed Plaintiff's PII And Video-Viewing Information To Third Parties ........................................ 16

C. Defendant "Knowingly" Disclosed PII To Amplitude And WebEngage ........................................ 18

CONCLUSION ........................................ 20

# TABLE OF AUTHORITIES

**PAGE(S)**

***CASES***

*Adams v. America's Test Kitchen, LP*,
680 F. Supp. 3d 31 (D. Mass. 2023) ........................................1, 19

*Ajemian v. Yahoo!, Inc.*,
83 Mass. App. Ct. 565 (2013)........................................3

*Austin-Spearman v. AMC Network Ent. LLC*,
98 F. Supp. 3d 662 (S.D.N.Y. 2015) ........................................12

*Bagg v. HighBeam Rsch., Inc.*,
862 F. Supp. 2d 41 (D. Mass. 2012) ........................................10

*Ballou v. Asset Mktg. Servs., LLC*,
46 F.4th 844 (8th Cir. 2022)........................................5

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022)........................................7

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
2017 WL 3727230 (S.D.N.Y. Sug. 11, 2017) ........................................20

*Berrey v. Evolve Cellular, Inc.*,
2023 WL 11199739 (D. Mass. Oct. 31, 2023) ........................................9

*Collins v. Pearson Education, Inc.*,
721 F. Supp. 3d 274 (S.D.N.Y. 2024) ........................................19

*Collins v. Toledo Blade*,
720 F. Supp. 3d 543 (N.D. Ohio 2024)........................................18

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
990 F.3d 173 (2d Cir. 2021)........................................8

*Cullinane v. Uber Techs., Inc.*,
893 F.3d 53 (1st Cir. 2018) ........................................4, 6, 7

*Doe v. Princess Cruise Lines, Ltd.*,
657 F.3d 1204 (11th Cir. 2011) ........................................8, 9

*Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir. 2015)........................................14

*Emmanuel v. Handy Techs., Inc.*,
992 F.3d 1 (1st Cir. 2021) ....................5

*Gardner v. Me-TV National Ltd. P'ship,*
132 F.4th 1022 (7th Cir. 2025)....................15

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. 2023) ....................14, 20

*Godun v. JustAnswer LLC,*
135 F.4th 699 (9th Cir. 2025)....................6, 7

*Good v. Uber Techs., Inc.*,
494 Mass. 116 (2024)....................4, 7

*Harris v. Public Broadcasting Serv.*,
662 F. Supp. 3d 1327 (N.D. Ga. 2023) ....................14

*In re Hulu Privacy Litigation*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) ....................20

*Jackson v. Amazon*,
65 F.4th 1093 (9th Cir. 2023)................... passim

*Jones v. Halliburton Co.*,
583 F.3d 228 (5th Cir. 2009) ....................8

*Kaunders v. Uber Techs., Inc.*,
486 Mass. 557 (2021) ....................2

*Louth v. NFL Enterprises LLC*,
2022 WL 4130866 (D.R.I. Sept. 12, 2022)....................16, 17, 19

*Mata v. Zillow Group, Inc.*,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024)....................14

*Mollett v. Netflix, Inc.*,
2012 WL 3731542 (N.D. Cal. Aug. 17, 2012) ....................20

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
514 U.S. 645 (1995)....................9

*Offley v. Fashion Nova, LLC*,
671 F. Supp. 3d 60 (D. Mass. 2023) ....................11

*Rancourt v. Meredith Corp.*,
2024 WL 381344 (D. Mass. Feb. 1, 2024)....................1, 15, 16

*Salazar v. National Basketball Association*,
118 F.4th 533 (2d Cir. 2024) ....................................................................................14, 15

*Saunders v. Hearst Television, Inc.*,
711 F. Supp. 3d 24 (D. Mass. 2024)................................................................... passim

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*,
871 F.3d 791 (9th Cir. 2017) ....................................................................................8, 9, 10

*United States v. Hastie*,
854 F.3d 1298 (11th Cir. 2017) ....................................................................................17

*Wilson v. Huuuge, Inc.*,
944 F.3d 1212 (9th Cir. 2019) ........................................................................................5

*Yershov v. Gannett Satellite Information Network, Inc.*,
104 F. Supp. 3d 135 (D. Mass. 2015) ......................................................................14, 15

*Yershov v. Gannett Satellite Information Network, Inc.*,
820 F.3d 482 (1st Cir. 2016) ........................................................................1, 12, 13, 17

**STATUTES**

18 U.S.C. § 2710(a)(1)......................................................................................................15

18 U.S.C. § 2710(a)(3)......................................................................................................18

Plaintiff Justin Korn ("Plaintiff") respectfully submits this Opposition to Defendant Simplilearn Americas Inc.'s ("Defendant" or "Simplilearn") Motion to Transfer Or, Alternatively to Dismiss the First Amended Complaint (ECF No. 16) (the "Motion" or "MTD").

**INTRODUCTION**

This is a classic case of "show, don't tell." Through screenshots of a "dynamic analysis," Plaintiff shows that when either iPhone or Android users of the Simplilearn App (the "App") watch a pre-recorded on the App, Defendant discloses a user's e-mail address, their geolocation down to a microscopic level of precision, and the title of the video (course) the user viewed to two third parties: Amplitude and WebEngage (the "Third Parties"). First Amended Complaint (ECF No. 12) ("FAC") ¶¶ 22, 29-32, 40, 52-55, 67-69. Through citations to and screenshots of the Third Parties' websites, Plaintiff shows Defendant disclosed this information to the Third Parties to de-anonymize users and bolster Defendant's marketing, advertising, and analytics efforts. *Id.* ¶¶ 76-97. And through these allegations, Plaintiff shows that Defendant knowingly violated the VPPA. It's a very simple fact pattern, and one courts in this Circuit have regularly sustained. *See generally Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482 (1st Cir. 2016); *Saunders v. Hearst Television*, *Inc*., 711 F. Supp. 3d 24 (D. Mass. 2024); *Rancourt v. Meredith Corp.*, 2024 WL 381344 (D. Mass. Feb. 1, 2024); *Adams v. America's Test Kitchen, LP*, 680 F. Supp. 3d 31 (D. Mass. 2023).

Defendant, by contrast, tells the Court that Plaintiff has not sufficiently alleged his VPPA claim, but ignores nearly every substantial allegation to the contrary. And Defendant tells the Court that it cannot preside over this matter because Plaintiff had notice of and assented to the hyperlink of its Terms and Conditions, which contain a forum selection clause requiring adjudication of this dispute in Texas. But missing from Defendant's presentation is the actual

design and content of the page its App where this hyperlink appears, let alone how it appeared when Plaintiff created his account "in or around June 2023." FAC ¶ 98. Indeed, Defendant's Motion goes as far as to contradict the affidavit of its CEO on this matter. *Compare* Kumar Decl. ¶ 5 (stating only that the "Sign Up" language was "in a blue font and is hyperlinked"); *with* MTD at 5 ("The words 'Terms and Conditions,' indeed, are hyperlinked, underlined, and in blue."). And even then, the terms Defendant submits appear to have been put in place in November 2024, whereas the forum selection clause selected either New York or California in June 2023. *See* Roberts Decl. Exs. 1-3. These evidentiary shortcomings preclude any finding that Plaintiff agreed to litigate this dispute anywhere but here, and least of all in Texas.

Simply put, Plaintiff shows that he has the evidence and the allegations to support his VPPA claim. Defendant says it has credible defenses, but its lack of evidence on topics for which Defendant has the burden of proof shows this is all smoke and mirrors.

For the following reasons, Defendant's Motion should be denied in full.

## ARGUMENT

### I. TRANSFER IS INAPPROPRIATE BECAUSE THE FORUM SELECTION CLAUSE IS NEITHER ENFORCEABLE NOR APPLICABLE

#### A. Defendant Has Failed To Meet Its Burden To Show Reasonable Notice And Assent Of Its Terms And Conditions

Defendant contends that "Plaintiff entered into an enforceable clickwrap agreement," because "[t]he website and App clearly put Plaintiff (and other users) on notice that, by creating an account, they must agree to be bound by the Terms and Conditions." MTD at 4-5 (cleaned up). As the "party seeking to enforce the contract," Defendant bears the "burden of proof" of showing users were on notice of and assented to its Terms and Conditions. *Kaunders v. Uber Techs., Inc.*, 486 Mass. 557, 572 (2021). Defendant cannot meet this burden here.

*1. Defendant Has Not Shown That It Put Plaintiff On Notice Of Its Terms*

Defendant's Motion stumbles out of the gate because Defendant did not submit the design and content of the screen on the App where users are ostensibly put on notice of the Terms and Conditions. Instead, Defendant proffers the Kumar Declaration, which purports to describe what the screen looks like. But describing what the screen may look like—as opposed to show what the screen *actually* looks like—is not sufficient for Defendant to meet its burden.

On this point, two cases are instructive. *First*, in *Ajemian v. Yahoo!, Inc.*, 83 Mass. App. Ct. 565 (2013), *aff'd*, 478 Mass. 169 (2013), in support of its motion to enforce a forum selection clause, the defendant submitted an affidavit stating that "prospective users are given an opportunity to review the Terms of Service and Privacy Policy prior to submitting their registration data to Yahoo!." *Id.* at 575 (cleaned up). However, the defendant did not submit the design and content of the webpage where this occurred. *Id.* The Appeals Court held that this declaration, "[s]tanding alone, [was] not enough to establish that the forum selection provision … w[as] reasonably communicated, or to whom they were communicated" because the record did not:

> contain information concerning the language that was used to notify users that the terms of their arrangement with Yahoo! could be found by following the link, how prominently displayed the link was, and any other information that would bear on the reasonableness of communicating the 2002 TOS via a link

*Id.* *Second*, in *Jackson v. Amazon*, 65 F.4th 1093, 1099 (9th Cir. 2023), in support of its motion to compel arbitration, the defendant submitted a declaration claiming it "notified drivers via email of the [updated terms of service]." However, the defendant "did not provide the court with a copy or description of any such notice." *Id.* That evidentiary lapse was fatal to the defendant's motion. As the Ninth Circuit held:

> there is no evidence that the email allegedly sent to drivers adequately notified drivers of the update. The district court did not

> have the email, so it could not evaluate whether the email (assuming it was received at all) sufficed to provide individualized notice. Nor did the court have other evidence that might allow it to assess notice, such as a description of the email. Amazon provided only a declaration with a vague statement that a notice of updated terms was sent via email.

*Id.* at 1100. Those same defects doom Defendant's Motion. As the First Circuit has held, if the terms of an agreement are "only available by following a link," that "hyperlink must be contextualized" and "may not be read in a vacuum" to ensure that other "similarly displayed terms presented simultaneously to the user" do not "diminish[] the conspicuousness" of the relevant terms. *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 62-63 (1st Cir. 2018). Therefore, it is imperative that a court be able to review the entire webpage interface of an online webpage in determining the conspicuousness and sufficiency of notice on that webpage. *See id.* at 62. In other words, were there more conspicuous elements on the page like promotional aspects? What font size or color was the "hyperlink" displayed in? And was there even a hyperlink at all to the Terms and Conditions, as Defendant offers conflicting statements about this. *Compare* Kumar Decl. ¶ 5 (stating only that the "Sign Up" language was "in a blue font and is hyperlinked"); *with* MTD at 5 ("The words 'Terms and Conditions,' indeed, are hyperlinked, underlined, and in blue.").[1]

These are important questions on which notice will rise and fall. *See Good v. Uber Techs., Inc.*, 494 Mass. 116, 131 (2024) (finding notice where "[t]he link to the terms of use was not buried on a cluttered screen or presented inconspicuously at the tail end of a cumbersome registration and payment process"). And they are questions that Defendant should have easily been able to answer by providing a depiction of what its app interface looked like when Plaintiff created an account.

---

[1] To the extent there was no hyperlink to the Terms and Conditions, that obviously does not suffice for assent. Regardless, the incongruity between what Defendant says in its briefing and what it says in the sworn declaration of its CEO is exactly why it needs to submit the exact design and content of the relevant page.

The fact that Defendant did not displays a lack of confidence at best and is suspicious at worst. Regardless, Defendant's Motion should be denied in the first instance based on its failure to submit what the App's "create your account" page actually looked like. *See also Ballou v. Asset Mktg. Servs., LLC*, 46 F.4th 844, 861 (8th Cir. 2022) (denying motion to compel arbitration where the defendant "provide[d] only a cropped, close-up screenshot of the purchase webpage, with most of the webpage omitted").

Even assuming the App's "create your account" page looks as Mr. Kumar described it to (and the Court cannot make this assumption), that is still insufficient for Defendant to meet its burden of notice. As an initial matter, Mr. Kumar appears to describe how the App's "create your account" page appears currently, *not* how it appeared when Plaintiff signed up for an account "[i]n or around June 2023." FAC ¶ 98. Failing to provide how the App appeared at the relevant time—or, at least, not making it clear—prevents Defendant from showing notice of the Terms and Conditions.

Moreover, Defendant's Motion contradicts the Kumar Declaration regarding whether there was even a hyperlink to the Terms and Conditions available on the "create your account" page. *Compare* Kumar Decl. ¶ 5 (stating only that the "Sign Up" language was "in a blue font and is hyperlinked"); *with* MTD at 5 ("The words 'Terms and Conditions,' indeed, are hyperlinked, underlined, and in blue."). To the extent the Terms and Conditions were not hyperlinked, "[t]his is the equivalent to admonishing a child to 'please eat your peas' only to then hide the peas." *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1221 (9th Cir. 2019). A user cannot possibly have notice and agree to terms that they were not given an opportunity to read. *Contra Emmanuel v. Handy Techs., Inc.*, 992 F.3d 1, 8-9 (1st Cir. 2021) (finding the plaintiff had reasonable notice of the

contract where, "prior to … selecting 'Accept,'" the smartphone screen "display[ed] … [a] portion of the Agreement that was plainly visible").

In short, Defendant cannot meet its burden to show Plaintiff was on notice of the Terms and Conditions because Defendant failed to submit the design and content of the "create your account" page, and the Kumar Declaration raises more questions (and inconsistencies) than answers. And even buying Defendant's evidentiary presentation, the design and content are still insufficient for notice because it does not even appear the Terms and Conditions were hyperlinked. Simply put, without a proper look at Defendant's account creation interface in place during June 2023, the Court lacks the tools necessary to determine whether a contract exists.

### 2. *Defendant Has Not Shown Plaintiff Unambiguously Assented To The Terms*

Even if the Kumar Declaration sufficed to show that Plaintiff was on notice of the Terms and Conditions (and it does not), Defendant still fails to show Plaintiff's "unambiguous assent" to its terms. *See Cullinane*, 893 F.3d at 61-62 (finding "unambiguous manifestation of assent" to the terms of online contracts "essential if electronic bargaining is to have integrity and credibility.").

A clickable check box that states "I understand and agree to the Terms and Conditions" but fails to "indicate to the user what action would constitute assent" is not enough to invite an unambiguous manifestation of assent. *Godun v. JustAnswer LLC*, 135 F.4th 699, 713 (9th Cir. 2025).[2] Instead, clicking on a check box can be construed as an unambiguous manifestation of assent "only if the user is *explicitly* advised that the act of clicking will constitute assent to the

---

[2] The Court in *Godun* applied California state contract law but noted that "we have consistently stated that no differences exist in the law of the different states as to internet contract formation." *Godun*, 135 F.4th at 708. Further, Defendant's Terms and Conditions had a California choice of law clause between June 10, 2023 and approximately November 2024, making California law all the more relevant. Roberts Decl. Ex. 2 at 6; *see also* Argument § I.C, *infra*.

terms and conditions of an agreement." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) (emphasis added). "Even strongly implicit advisement isn't enough—a webpage must explain that certain actions will be understood by the offeror to signal assent to contractual terms." *Godun,* 135 F.4th at 711; *contra Good*, 494 Mass. at 132 (finding unambiguous assent where advisal stated "*[b]y checking the box*, I have reviewed and agree to the Terms of Use") (emphasis added).

Here, the Kumar Declaration states that for a user to "click the 'Create Account' button, the user must check a box stating: '*I agree* to the Terms and Conditions.'" Kumar Decl. ¶ 5 (emphasis added). However, this check box mechanism, in isolation, is insufficient to manifest assent. Defendant makes no mention of any additional indication to the user regarding "what action would constitute assent" or any explanation that clicking the box would "signal assent to contractual terms." *See Godun* 135 F.4th at 699, 711, 713. Further, as noted above, it is not clear from the Kumar Declaration that the Terms and Conditions themselves were hyperlinked, meaning it was unclear whether the Terms and Conditions were even accessible to consumers. And, of course, a user cannot manifest assent to a contract that they are denied the opportunity to review or read.

Regardless, the lack of the required additional advisement regarding what is necessary to assent to its terms prevents Defendant from meeting its burden to show acceptance of such terms, making the venue-selection clause unenforceable for lack of assent. *See Godun,* 135 F.4th at 699; *Cullinane,* 893 F.3d at 62.

### B. Plaintiff's Claim Is Not Within The Scope Of The Forum Selection Clause

Even assuming Plaintiff was on notice of and assented to the Terms and Conditions (and he was not), the forum selection clause still does not apply to Plaintiff's claim. That is because,

although the forum selection clause purports to cover claims "relating to, in connection with, or arising out of, this Agreement" (Kumar Decl. Ex. A at 10), none of those categories cover Plaintiff's claims.

Again, *Jackson* is instructive.[3] In that case, Amazon's terms of service with its drivers included a clause requiring arbitration of all disputes "arising out of or relating in any way to this Agreement, including participation in the program or performance of services." *Jackson*, 65 F.4th at 1095 (cleaned up). The drivers sued for privacy violations and alleged that Amazon eavesdropped on drivers' posts in private Facebook groups. *Id*. at 1096. The Ninth Circuit found that the drivers' privacy claims did not "relate to" the agreement because "Amazon's alleged misconduct existed independently of the contract and therefore fell outside the scope" of the agreement. *Id*.

*Jackson* also follows a long line of holdings from the Second, Fifth, Ninth, and Eleventh Circuits that rejected application of a similarly "broad" contractual clauses to claims that arose independently of any contract. *See, e.g.*, *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 183-84 (2d Cir. 2021); *Jones v. Halliburton Co.*, 583 F.3d 228, 240 (5th Cir. 2009); *United States ex rel. Welch v. My Left Foot Children's Therapy*, LLC, 871 F.3d 791, 799 (9th Cir. 2017); *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1219-20 (11th Cir. 2011). As these Circuits have explained, the claims in each of these cases arose outside the scope of an existing contract because "the defendant could have engaged in the same conduct even in the absence of any contractual … relationship with the plaintiff, and a third party could have brought the same claims [] based on

[3] As noted below, when Plaintiff signed up for his Simplilearn account in June 2023, the Agreement was to "be governed and construed in accordance with the Laws of California." Roberts Decl. Ex. 2 at 6; *see also* Argument § I.C, *infra*. Thus, Ninth Circuit law is binding on this Court to the extent California law applies.

virtually the same alleged facts." *Welch*, 871 F.3d at 799 (cleaned up). "Related to" necessarily denotes a relationship and the performance of duties specified by the agreement forming the relationship; if "'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for [r]eally, universally, relations stop nowhere" *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) (cleaned up); *see also Doe*, 657 F.3d at 1218-19 (stating the same, "otherwise, the term would stretch to the horizon and beyond" or "be meaningless").

Courts in this Circuit are in accord. For instance, in *Berrey v. Evolve Cellular, Inc.*, 2023 WL 11199739, at *6 (D. Mass. Oct. 31, 2023), the court held that a forum selection clause's scope was "substantively limited to" the terms of a confidentiality agreement. Thus, "claims … related to the non-payment of wages and subsequent retaliation" fell outside the scope of the forum selection clause because they "d[id] not implicate any of the Confidentiality Agreement's substantive provisions, even indirectly." *Id.*

Applying those holdings here, Plaintiff's VPPA claim does not relate to, arise from, and is not connected with the Terms and Conditions. Plaintiff's claim solely concerns Defendant's disclosure of users' personal information to third parties. FAC ¶¶ 28-32. The claim has nothing to do with any provision of the Terms and Conditions and would exist regardless of whether the Terms and Conditions existed or were binding (indeed, they are not here). And the forum selection clause does not purport to cover any other categories, such as claims relating to Defendant's services or the videos users view on them. Because Defendant's "alleged misconduct existed independently of the contract, it "therefore f[a]ll[s] outside the scope of the" forum selection clause. *Jackson*, 65 F.4th at 1104.

Defendant's reliance on *Bagg v. HighBeam Rsch.*, *Inc*., 862 F. Supp. 2d 41 (D. Mass. 2012), is misplaced. MTD at 7-9. In *Bagg*, the plaintiff's claims "center[ed] on the allegation that [the defendant] failed to disclose material terms" in the parties' agreement. *Bagg*, 862 F. Supp. 2d at 46. The plaintiff also brought a claim under the Illinois Automatic Contract Renewal Act, "which revolve[d] around a contract between Plaintiffs and Defendants." *Id*. Thus, both claims were based on specific provisions of the contract between the parties. *Id.* ("Although the Amended Complaint does not explicitly state that the contract at issue in this claim is the Agreement, Plaintiffs have not identified any other contract to which these allegations could refer."). That is unlike Plaintiff's VPPA claim here, which exists independently of the Terms and Conditions and would exist regardless of whether the Terms and Conditions did.

Defendant also contends that Plaintiff's claim "relates to" a provision within the Terms and Conditions entitled "Usage of Personal Information of Participants." MTD at 9. However, this provision concerns Simplilearn's right to "feature users' pictures in promotional materials and use personal information to inform users about other training materials"—in other words, internal uses. *Id*. Plaintiff's VPPA claim, on the other hand, concerns Simplilearn's *external* disclosure of Plaintiff's personally identifiable information, including protected video-viewing history, to third parties without consent. Plaintiff's claim, therefore, does not "relate to" this provision nor any other provision within the Terms and Conditions. In any event, Plaintiff could have brought the same VPPA claim "based on virtually the same facts" had the Terms and Conditions not existed. *See Welch*, 871 F.3d at 799; *Jackson*, 65 F.4th at 1104.

Thus, even assuming Plaintiff was on notice of and assented to the forum selection clause (and he did not), the clause does not cover Plaintiff's VPPA claim.

### C. To The Extent The Forum Selection Clause Applies, Transfer To New York Or California Is Proper Because That Is The Forum Defendant Selected When Plaintiff Created His Account

Even assuming the forum selection clause applies (and it does not), transfer to Texas is not appropriate. Plaintiff alleges that he signed up for a Simplilearn account "[i]n or around June 2023." FAC ¶ 98. As of June 1, 2023, Defendant's Terms and Conditions had a New York forum selection clause. Roberts Decl. Ex. 1 at 4. As of July 1, 2023, Defendant's Terms and Conditions had a California forum selection clause. Roberts Decl. Ex. 2 at 6. However, the Terms and Conditions state they were "[l]ast updated on 10th June 2023," meaning the California forum selection clause appeared operative throughout June.[4] *Id.* at 7. And Defendant has adduced no evidence that it put Plaintiff on notice of any updated terms and conditions, much less that Plaintiff assented to them, or that changes to its Terms and Conditions applied retroactively. *See*, *e.g.*, *Offley v. Fashion Nova, LLC*, 671 F. Supp. 3d 60, 67 (D. Mass. 2023) (finding arbitration clause added to later versions of terms and conditions did not apply retroactively); *Jackson*, 65 F.4th at 1100-01 (finding no notice of updated terms and noting "[t]he new Restatement of the Law on Consumer Contracts now makes clear that a consumer must receive a "reasonable notice of the proposed modified term and a reasonable opportunity to reject the proposed modified term. It is not sufficient to provide a general notice of the possibility of future modifications.") (cleaned up).

Long story short, to the extent the forum selection clause applies (and it does not), Plaintiff's action should be transferred to New York (if he signed up between June 1, 2023 and June 10, 2023), or to California (if he signed up at any time between June 10, 2023 and June 30, 2023). But in no event should Plaintiff's action be transferred to Texas

[4] Strangely, Defendant's current terms also appear to say "[l]ast updated on 10th June 2023." Kumar Decl. Ex. A at 10. In truth, it appears the Texas forum selection clause was not added until approximately November 2024. *See* Roberts Decl. Ex. 3.

## II. PLAINTIFF PLAUSIBLY ALLEGES A VIOLATION OF THE VPPA

### A. Plaintiff Is A "Consumer" Under *Yershov*

Defendant ignores binding First Circuit precedent and instead relies on (outdated) *Second* and *Eleventh* Circuit caselaw to mistakenly argue that Plaintiff "fails to adequately and plausibly allege that he is a 'consumer' under the VPPA" because "[a]n individual must do more than simply take advantage of a provided service … to have acted as a subscriber of the provider." MTD at 11 (citing *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 671 (S.D.N.Y. 2015)). Defendant argues that Plaintiff failed to "provide[] something of value, such as money or qualifying information" in exchange for the privilege of viewing videos on the Simplilearn App. MTD at 12. The First Circuit—and more recently, the Second and Seventh Circuits—say otherwise.

In *Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482, 487, 489 (1st Cir. 2016), the First Circuit held that "downloading a mobile device application" was sufficient to classify the plaintiff as a "subscriber" under the VPPA, as "Yershov's decision to download the App seems a fair enough indication that he intended more than a one-shot visit." Indeed, the First Circuit specifically "decline[d] to interpret the statute as incorporating monetary payment as a necessary element," noting instead that while the plaintiff "paid no money, access was not free of a commitment to provide consideration in the form of … [personal] information, which was of value to Gannett." *Id*. at 488-89. The First Circuit explained:

> To use the App, Yershov did indeed have to provide Gannett with personal information … each linked to his viewing selections. … [B]y installing the App on his phone, thereby establishing seamless access to an electronic version of USA Today, Yershov established a relationship with Gannett that is materially different from what would have been the case had USA Today simply remained one of millions of sites on the web that Yershov might have accessed through a web browser.

*Id*. at 489. With this standard in mind, Plaintiff's allegations plausibly establish that he is a "subscriber" under the VPPA. Plaintiff explains that the "app's sign-up process requires users who are creating an account to provide their full name, email address, and contact phone number to Defendant." FAC ¶ 19. While there are multiple methods to sign in, Plaintiff alleged that to create a Simplilearn account, a user "must at least provide their email address" and that "after account creation and when a user first attempts to watch videos for a Simplilearn course, Defendant requires users to provide their first name, last name, title, gender, date of birth, and time zone, with the additional option of providing the user's LinkedIn profile." *Id.* Notably, Defendant's own CEO admits that "[t]o access any content on Simplilearn's platform (via web browser and mobile application), a user must create a Simplilearn account" and, in doing so, provide all the PII required to complete account creation. Kumar Decl. ¶ 5. And Plaintiff establishes that he "downloaded the Simplilearn App on his iPhone and created a Simplilearn account," and that he "used the App and viewed videos on the App in Massachusetts during June 2023," such that his PII was disclosed to the Third Parties "each time Plaintiff viewed a video on the App." *Id*. ¶¶ 98-99, 102-103.

This conduct sufficiently shows that Plaintiff "intended more than a one-shot visit" to the Website," and that he "established a[n] [ongoing] relationship with" Defendant. *Yershov*, 820 F.3d at 487-88. And by downloading the Simplilearn App and creating an account, Plaintiff "provide[d] consideration in the form of [his personal] information, which was of value to [Defendant]." *Id*. at 489. Plaintiff alleges that Defendant disclosed his PII (including Plaintiff's video-viewing information) to Amplitude and WebEngage for marketing, advertising, and analytics, which are activities that generate revenue for Defendant. FAC ¶¶ 28-32, 48, 102-103.

These allegations make Plaintiff a "consumer" under the VPPA. *See, e.g.*, *Saunders v. Hearst Television*, *Inc*., 711 F. Supp. 3d 24, 30 (D. Mass. 2024) (holding plaintiffs were consumers

where "any time a user views a video on one of Hearst's apps, the full name of the video and/or the video ID is provided to Braze and Google with the user's AAID or user ID"); *Salazar v. National Basketball Association*, 118 F.4th 533, 552 (2d Cir. 2024) (same where plaintiff provided PII to defendant in exchange for newsletter, enabling defendant to "discover[] where [plaintiff's] device was" and "increased the NBA's potential to urge Salazar to visit NBA.com"); *Harris v. Public Broadcasting Serv.*, 662 F. Supp. 3d 1327, 1331 (N.D. Ga. 2023) (same where "she registered for a PBS account and provided Defendant her personal information, including her name, address, email, IP address and cookies"); *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 721-22 (N.D. Cal. 2023) (same where plaintiff "provided defendant with his personal information, including his name and email address") (cleaned up); *Mata v. Zillow Group, Inc.*, 2024 WL 5161955, at *4 (S.D. Cal. Dec. 18, 2024) ("Plaintiff has adequately pled that he is a 'subscriber' of Defendant's website … Plaintiff registered for Defendant's website and created a Zillow account … [and] shared his personal information, including his email address and Facebook ID."); *contra Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir. 2015) (finding plaintiff was not a "subscriber" where he "did not sign up for or establish an account with Cartoon Network, did not provide any personal information to Cartoon Network, … [and] did not become a registered user of Cartoon Network or the CN app").

Defendant overreads *Yershov* to hold that a user must allege they provided PII "in exchange for viewing the alleged videos." MTD at 13. Not so. *Yershov*'s focus was on the commitment users formed when downloading an app and providing their PII in that process—not on being required to provide PII to watch a video. Indeed, the facts of *Yershov* betray Defendant's understanding because users were not required to provide PII. *See Yershov v. Gannett Satellite Information Network, Inc.*, 104 F. Supp. 3d 135, 138 (D. Mass. 2015), *rev'd*, 820 F.3d 482 (1st Cir.

2016) ("There is no registration requirement (such as a requirement that the user provide a name and e-mail contact) [to use the App]. After responding to the request for permission to 'push' notifications, the user is not required to provide any other information in order to use the App.") (cleaned up). Consistent with that understanding, other courts in this District have found plaintiffs to be "consumers" under the VPPA even where the provision of PII was optional. *See Rancourt v. Meredith Corp.*, 2024 WL 381344, at *13 (D. Mass. Feb. 1, 2024) (finding plaintiff was a "subscriber under the VPPA" because "regardless of whether or not Mr. Rancourt was required to enable GPS tracking on his phone to use the App, he nevertheless did so, and Meredith then allegedly profited from the use of Mr. Rancourt's user data"); *Saunders*, 711 F. Supp. 3d at 30 (same where "Saunders provided her email address to the WCVB 5 app and that both Saunders and Hayden enabled [optional] geolocation services and push notifications").

Further, there is no requirement that a user provide PII in exchange for viewing a video to be a "consumer" under the video. Instead, "the term 'consumer' means any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). The First Circuit did not impose a video-related limitation on this term in *Yershov*, and indeed, the opposite conclusion can be inferred from the opinion. That is, *USA Today* does not exclusively provide videos—it provides written articles—such that downloading the app does not mean a consumer is exclusively subscribing to video content. Yet, *Yershov I* held the plaintiff was a "subscriber" all the same. And the Second and Seventh Circuits have directly rejected such a limitation. *Salazar*, 118 F.4th at 549 ("[I]t makes sense that 'consumer' should be understood to encompass a renter, purchaser, or subscriber of *any* of the provider's 'goods or services'—audiovisual or not.") (emphasis in original); *Gardner v. Me-TV National Ltd. P'ship*, 132 F.4th 1022, 1025 (7th Cir. 2025) ("Any purchase or subscription from a 'video tape service provider'

satisfies the definition of 'consumer', even if the thing purchased is clothing or the thing subscribed to is a newsletter.").

Thus, Plaintiff is a "consumer" or "subscriber" under the VPPA.

### B. Defendant Disclosed Plaintiff's PII And Video-Viewing Information To Third Parties

Defendant posits two arguments describing how Plaintiff "failed" to "allege that Simplilearn disclosed PII in violation of [the] VPPA." MTD at 14. Neither holds water.

*First*, Defendant claims that "Plaintiff fails to plead a single fact related to alleged 'disclosure' by Simplilearn." MTD at 14. Defendant ignores the findings of Plaintiff's dynamic analysis, which "record[ed] the transmissions that occur from a user's device while using the App." FAC ¶ 22. And the dynamic analysis found that "when a user views a video on the App on either an Android or iOS mobile device, Defendant transmits information sufficient to permit an ordinary person to identify a specific person's video-viewing behavior to third parties Amplitude and WebEngage." *Id.* ¶ 28. Plaintiff then proceeds to back this up by showing screenshots of the transmissions containing the PII Defendant is disclosing to Amplitude and WebEngage. *Id.* ¶¶ 29-32. None of this is "conclusory" or based on the Third Parties' "capabilities." MTD at 14. The allegations were based on what was actually observed going on in the App. Consistent with that, courts in this Circuit have sustained VPPA claims based on a pre-suit analysis conducted by undersigned counsel. *See, e.g.*, *Saunders*, 711 F. Supp. 3d at 28 (sustaining VPPA claim where "[p]rior to filing this case, plaintiffs' counsel retained a private research company to analyze what, if any, personal data is transmitted by Hearst's apps when a user watches a video"); *Rancourt*, 2024 WL 381344, at *2 (same where "[t]hrough an analysis conducted by 'a private research company,' at the behest of Mr. Rancourt's counsel, Mr. Rancourt discovered that Meredith … disclosed to Twilio information about Mr. Rancourt"); *Louth v. NFL Enterprises LLC*, 2022 WL 4130866, at

*1 (D.R.I. Sept. 12, 2022) (same where "[t]he plaintiff's counsel retained a private research company to conduct a dynamic analysis of the NFL App … [that] revealed that NFL Enterprises transmits information sufficient to identify class members and the videos they watch to an unrelated third party") (cleaned up).

*Second*, Defendant argues that "Plaintiff asserts no factual allegations that Simplilearn disclosed the title of any video viewed by Plaintiff" because the snippets of the dynamic analysis that Plaintiff includes "do not show any video title or video ID whatsoever." MTD at 15 (cleaned up). As an initial matter, Defendant does not dispute that the e-mail addresses and geolocation it disclosed to the Third Parties (*see*, *e.g.*, FAC ¶¶ 40-41 49) identify Plaintiff and Class Members, nor could it. *Louth*, 2022 WL 4130866, at *2 ("The NFL App discloses a user's geolocation with more than three decimal places of accuracy (*i.e*., within less than forty feet of the user) … [t]he geolocation data disclosed, therefore, is 'reasonably and foreseeably likely' to identify a user who watched videos on the NFL App.'") (citing *Yershov*, 820 F.3d at 486); *United States v. Hastie*, 854 F.3d 1298, 1303 (11th Cir. 2017) ("Email addresses fall within the ordinary meaning of information that identifies an individual.").

Moreover, Defendant does disclose the pre-recorded video materials that users request or obtain. As Plaintiff alleges, the name of the courses being viewed are disclosed to the Third Parties (FAC ¶¶ 52-53, 67-68), and "[b]ecause each on-demand course on the App is a packet—is a formulated standalone offering that contains its own distinct video modules … disclosure of the course title also discloses precisely what videos were requested and obtained by any given user." *Id.* ¶ 55; *see also id.* ¶ 71. Moreover, "this network traffic is transmitted when, and only when, the user actually plays the course module." *Id.* ¶¶ 54, 70. Defendant also discloses the course IDs (video IDs) to the Third Parties. *Id.* ¶¶ 67, 69.

Defendant's actual gripe appears to be that parameters are called "course title" as opposed to "video title." MTD at 15. This is a distinction without a difference. Given each course is a packet of video modules (FAC ¶ 55), disclosing the name of the course is sufficient to show which videos the user requested or obtained. But if this were not enough, the dynamic analysis also found that Defendant discloses parameters such as "video progress percentage" and "'event_name': 'Viewed Lesson View'" to the Third Parties:


```
        "lesson id": "67506",
        "lesson name": "Conditional Statements in Python",
        "lesson number": "Lesson 5",
        "product id": "1723",
        "product name": "Python for Beginners",
        "product type": "course",
        "topic id": "676419",
        "topic name": "5.1 Conditional Statements in Python",
        "video progress percentage": "0"
        [...]
},
"event_name": "Viewed Lesson Video",
```


*Id.* ¶ 69. Defendant disputes Plaintiff's allegations, but the declaration from its CEO does not deny them. *See generally* Kumar Decl. Thus, Plaintiff has plausibly alleged that Defendant disclosed information identifying who he is and what videos he requested or obtained to the Third Parties.[5]

### C. Defendant "Knowingly" Disclosed PII To Amplitude And WebEngage

Defendant contends that "Plaintiff fails to assert any allegations that Simplilearn 'knowingly' disclosed Plaintiff's PII" because "although Plaintiff alleges that Amplitude and WebEngage may connect disparate pieces of data for certain alleged purposes, allegations related to the capabilities of their software state nothing about Simplilearn's intent to knowingly disclose

[5] To be clear, the VPPA only prohibits disclosure of "information which identifies a person as having *requested or obtained* specific video materials or services." 18 U.S.C. § 2710(a)(3) (emphasis added). This is not synonymous with whether a person actually watches the videos at issue. *See Collins v. Toledo Blade*, 720 F. Supp. 3d 543, 551 n.6 (N.D. Ohio 2024). Regardless, Defendant discloses whether the videos were in fact watched here. FAC ¶ 69.

PII to third parties." MTD at 15-16. Except, no "capability" to connect "disparate pieces of data" is necessary because Defendant discloses information identifying who users are and what videos they request or obtain in a single transmission to each Third Party. FAC ¶¶ 29-32. Thus, there is no need for the Third Parties to try to link or potentially link this information together, as it is already linked and connected together for the Third Parties by Defendant. *Collins v. Pearson Education, Inc.*, 721 F. Supp. 3d 274, 288 (S.D.N.Y. 2024) (finding disclosure of PII where "Pearson discloses to Meta … the specific video name that the digital subscriber requested, the URL, and the digital subscriber's FID to Facebook in a single transmission.").

Defendant also ignores Plaintiff's allegations regarding the purposes for which it disclosed PII to the Third Parties. It should go without saying that third party software does not appear in a mobile application by accident. Instead, it was purposefully integrated into the App by Defendant. FAC ¶¶ 81, 97. And the reasons for this, as Plaintiff makes clear, were to de-anonymize users and compile their information into profiles for marketing and advertising. *See, e.g.*, FAC ¶¶ 78-80, 83-96. None of these are "capabilities"—they are advertised services of the Third Parties that Defendant is alleged to use "each and every one of." FAC ¶¶ 81, 97. Courts have held these allegations are sufficient to establish a "knowing" disclosure. *See Saunders*, 711 F. Supp. 3d at 31 ("[T]he FAC is rife with allegations that Hearst knew that it was collecting data from users that identified personalized information about them because, in exchange for the data, Braze and Google provided Hearst with analytics allowing it to provide advertisements tailored to specific users."); *Louth*, 2022 WL 4130866, at *4 ("[I]t can reasonably be inferred that NFL Enterprises knowingly transmitted PII for the purpose of targeted advertising."); *Adams v. America's Test Kitchen, LP*, 680 F. Supp. 3d 31, 43 (D. Mass. 2023) (knowing disclosure of PII where "Adams asserts that at all relevant times, Defendants knew that the Facebook Pixel disclosed personally

identifiable information to Facebook, as evidenced by the functionality of the Pixel, including that the Pixels' sharing of information with Facebook enabled Defendants' website to show targeted advertising to its digital subscribers based on the content those digital subscribers had requested or obtained on the website, including videos") (cleaned up).

Defendant's authorities are inapposite. In *In re Hulu Privacy Litigation*, 86 F. Supp. 3d 1090, 1096 (N.D. Cal. 2015), the court found no knowing disclosure at summary judgment where "[t]he user's identity and that of the video material were transmitted separately (albeit simultaneously)." The same was true of *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 3727230 (S.D.N.Y. Sug. 11, 2017). *Id.*, at *9 ("Bernardino's case hinges on the transmission of certain information which, if combined with other information that Facebook has, would link Bernardino's unique Facebook ID to her DVD purchase.").[6] That fact pattern is distinct from this case, where Defendant disclosed the information identifying who a user is and what videos they watched together in a single transmission. FAC ¶¶ 29-32. And in *Mollett v. Netflix, Inc.*, 2012 WL 3731542, at *1 (N.D. Cal. Aug. 17, 2012), the allegation was that anyone could view a user's previously viewed videos if they accessed the Netflix app on, for example "an Internet-ready television." Thus, there wasn't really a disclosure by Netflix, and even if there was, it was "essentially made to the consumer," rather than a third party. *Id.*, at *4 (cleaned up).

Therefore, Defendant knowingly disclosed Plaintiff's PII to the Third Parties.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion should be denied in full. To the extent that any portion of Defendant's Motion is granted, Plaintiff requests leave to amend.

---

[6] *Bernardino* also concerned "a motion for preliminary injunction and thus applied a higher standard than applies at motion to dismiss. *See Ghanaat*, 689 F. Supp. 3d at 721 n.10.

Dated: June 10, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Yitzchak Kopel*
Yitzchak Kopel

Yitzchak Kopel (BBO #716245)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com

*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 10, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Yitzchak Kopel*
Yitzchak Kopel